FILED

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

2018 JAN 16  PM 12: 55

CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS FLORIDA

PUBLIC RISK MANAGEMENT          CASE NO.:
OF FLORIDA,

      Plaintiff,

v.                                   2:18-cv-27-FtM-99MRM

MUNICH REINSURANCE AMERICA,
INC., a foreign Corporation authorized
to do business in Florida,

      Defendant.
_____/

## COMPLAINT FOR BREACH OF CONTRACT AND FOR DECLARATORY JUDGMENT AND RELIEF AND DEMAND FOR JURY TRIAL

    Plaintiff, PUBLIC RISK MANAGEMENT OF FLORIDA, hereby sues Defendant,

MUNICH REINSURANCE AMERICA, INC., and sues herein for breach of contract and

for declaratory relief, and alleges the following:

### PARTIES

1. This is an action for a declaration of rights pursuant to Chapter 86, Fla. Stat., and for

breach of contract in which the damages exceed $50,000, exclusive of interest, attorneys'

fees, and costs.

2.  Plaintiff, PUBLIC RISK MANAGEMENT OF FLORIDA, (hereinafter "PRM"), is a

State of Florida self-insured intergovernmental risk management association, pool or

program, organized pursuant to §768.28(16), and Chapter 163, Fla. Stat., and other Florida Statutes, for the purpose of self-insuring its members civil liability, and other exposures, and which was formed in 1987 with its principal place of business located in Lee County, Florida.   PRM's membership is comprised exclusively of various Florida local governmental entities, including municipal corporations such as the City of St. Pete Beach, Florida, as well as counties, special taxing districts and/or other political subdivisions of the State of Florida.

3. Defendant, MUNICH REINSURANCE AMERICA, INC., (hereinafter "Munich," or "MUNICH"), is an out-of-state corporation organized and incorporated in the State of Delaware and with administrative offices in Princeton, New Jersey, and authorized to transact the business of insurance and/or reinsurance coverage in Florida, and in particular in this litigation, for PRM and its members in the State of Florida from April 1, 2008 to April 1, 2009. Specifically, Munich reinsured PRM and its members, including the City of St. Pete Beach, under a "Multiple Line Excess of Loss Reinsurance Agreement" No. 151198 – 3010077 effective for the period from April 1, 2008 to April 1, 2009, pursuant to which Munich contractually agreed to indemnify PRM, and also to reimburse legal expenses incurred by PRM,  on an excess of loss basis, for any Ultimate Net Loss paid by PRM as a result of "claims made", or "occurrences", under PRM Coverage Document No. 08 – 011, effective for the period from April 1, 2008 until April 1, 2009. A copy of said

Reinsurance Agreement is attached hereto as Exhibit "A". This coverage included, but was not limited to, Public Officials Errors and Omissions liability coverages.

4. The City of St. Pete Beach, Florida (hereinafter referred to as "the CITY") is a municipal corporation located in Pinellas County, Florida and is, at all times material hereto, was a member of the PRM program, or pool.

5. Plaintiff, PRM's, damages are in excess of the $50,000.00, the jurisdictional minimum of this Court, exclusive of costs, interest, and attorneys' fees.

6. This Court has diversity jurisdiction in this litigation because Defendant, MUNICH is an out-of-state corporation doing business in Florida while PRM is domiciled in Florida, and because the complained-of actions and omissions at issue herein, and in controversy herein, occurred primarily in St. Pete Beach, and/or Pinellas County, Florida, or otherwise in the Middle District of Florida, and because, based upon information and belief, Defendant is and at all times has been authorized to do business in the State of Florida and within the relevant time periods, transacted business in the State of Florida, including but not limited to the selling of "excess of loss" insurance and/or reinsurance to PRM and to the City of St. Pete Beach. Furthermore, the relevant reinsurance treaty or contract (or agreement) at issue is specifically governed by the laws of the State of Florida - see Article XXIV, page 18 of Exhibit "A".

## GENERAL ALLEGATIONS

7. On or about April 1, 2008, PRM issued Coverage Document No. 08-011 for its membership, including but not limited to the City of St. Pete Beach, under which PRM had a self-insured retention (hereinafter "SIR") of $200,000 for each "occurrence" and/or "claim made" alleging Public Official Errors and/or Omissions, and for which MUNICH, pursuant to the terms and provisions of Exhibit "A", provided PRM with reinsurance, or excess of loss, policy limits of coverage of $1,800,000 per PRM Member for Ultimate Net Loss paid by PRM as a result of any claims made, or occurrences, during the term of Exhibit "A". A copy of the PRM Coverage Document No. 08-011, with the coverage period beginning with an effective date of April 1, 2008 and expiring on April 1, 2009 at 12:01 AM, is attached hereto as Exhibit "B".

8.  PRM, as a Florida self-insured intergovernmental risk management association, pool or program, sought to, and did, obtain "excess of loss" insurance, or reinsurance, with Munich for the use and benefit of its members including, but not limited, to the City of St. Pete Beach for claims and/or civil litigation involving alleged "wrongful acts" and "occurrences" during the coverage period beginning April 1, 2008 and expiring on April 1, 2009.  Simultaneously, PRM entered into a contract or treaty for reinsurance with Munich effective April 1, 2008, which again provided for reinsurance for the coverage period of April 1, 2008 through April 1, 2009.

9. In the instant dispute, the Reinsurance Treaty (hereinafter "The Treaty" or "Reinsurance Treaty") obligated MUNICH to provide reinsurance, or "excess of loss" insurance, to PRM for "claims made", "wrongful acts" and/or "occurrences", pursuant to PRM's Coverage Document, to its members under Public Officials Errors and Omissions Liability coverages in excess of $200,000, as well as other specifically identified losses.   The Treaty specifically provided up to $1.8 million limits of liability for 100% of PRM's Ultimate Net Loss (including legal defense costs) for each claim made, subject to a $200,000 self-insured retention payable by PRM. See Exhibit "A", Article I, and Article IV ( C ) (1).

10.   Beginning after the commencement of coverage on April 1, 2008, a lawsuit Complaint was filed in Pinellas County Circuit Court, case # 09-19562—CI-19 styled <u>Chester J Chmielewski and Katherine A. Chmielewski, Plaintiffs v. the City of St. Pete Beach</u>. Said lawsuit and claim, hereinafter referred to as the "underlying lawsuit" or "underlying action", was first reported by the City of St. Pete Beach to PRM on or about February 9, 2009, and on December 12, 2009, the City was informed by PRM that no coverage was afforded under the PRM Coverage Document at that time because claimants had alleged 2 counts for inverse condemnation, which were both excluded by the terms and provisions of the PRM Coverage Document.

11. After an initial amendment of the operative complaint in the underlying action, a 2nd Amended Complaint was filed by the Chmielewskis in Pinellas County Circuit Court case #09-19562-CI-19 on or about November 18, 2013 wherein said underlying action Plaintiffs

(hereinafter "Chmielewskis") generally alleged within its two (2) count Complaint that the City both committed a civil rights violation and/or deprivation of said Plaintiffs Federal civil rights in violation of the 4th Amendment to the United States Constitution and 42 U.S.C. Sections 1983 & 1988 with regard to the use and enjoyment of their property (Count 1), and that the CITY's actions with regard to said Plaintiffs and to their property in St. Pete Beach after November 26, 2008 constituted an unlawful taking of property without payment of full compensation in violation of Article X, Section 6 (a) of the Florida Constitution (1968) (Count 2). A copy of said 2nd Amended Complaint is attached hereto as Exhibit "C", composite. Said litigation was shortly thereafter removed from Pinellas County Circuit Court to the Federal District Court for the Middle District of Florida, Tampa division, Case # 8:13-cv-03170-JDW-MAP

12. The Chmielewskis specifically alleged within their 2nd Amended Complaint in the underlying action, among other things, that as a result of the City of St. Pete Beach claiming in 2005 that they did not own the Beach property parcel in question and denying their ownership rights in question, the Chmielewskis brought a quiet title action against the City to establish their rights in that Beach parcel on or about April 26, 2006—see paragraphs 34 & 35 of Exhibit "C".

13. Moreover, said underlying action Plaintiffs alleged in that 2nd Amended Complaint that in May, 2008, the Pinellas County Circuit Court entered a partial summary judgment quieting title to them and establishing their fee simple title to the Beach property parcel

contiguous to their home property subject to the use restrictions of record, and that after a mediation resulting in a settlement agreement by the parties that the City's ownership of an adjacent Arts Center did not give members of the general public the right to travel onto that Beach parcel, the Pinellas County Circuit Court entered a stipulated final judgment approving that mediated settlement agreement (which was approved by the St. Pete Beach City Commission and adopted by the Circuit Court) on or about November 26, 2008 – see paragraphs 37, 38 & 39 of Exhibit "C".

14. Furthermore, in that 2nd Amended Complaint, the Chmielewskis alleged, among other things,

A.    That "...[a]t least from the time of the Quiet Title Final Judgment [entered on or about November 26, 2008], the City knew that the Chmielewskis were the owners of the Beach property and that the subdivision deed and plat restrictions limited the use of Block M (and N) to the subdivision residents for Beach and bathing purposes (see Count 1, paragraph 56 of Exhibit "C"), but that the City **thereafter** took several actions to frustrate those ownership interests. Specifically, the underlying action plaintiffs alleged that **after November 26, 2008,** the City's actions communicated to and encouraged the public that the beach parcel and property in question were available for public use (paragraph 57 of Exhibit "C") (emphasis added);

B.      The City repeatedly frustrated their actions and threatened legal actions when the Chmielewskis attempted to prevent public access across their property (see paragraph 58 of Exhibit "C"); and

C.      The City encouraged the regular presence of a veritable army of public trespassers who freely and regularly traversed their beach property, littering, making noise and damaging the Beach dunes, so much so that it constituted a meaningful interference with their possessory interest in the property, **despite the Final Judgment of November 26, 2008 conclusively establishing their ownership and private use rights** (see paragraph 59 of Exhibit "C") (emphasis added).

15.   The Chmielewskis further alleged that, despite the November 26, 2008 stipulated Final Judgment quieting title of the Beach parcel to them, the City of St. Pete Beach never changed the zoning map or designation for the Beach parcel (see paragraph 43 of Exhibit "C"), **and that within weeks of the Final Judgment,** the St. Pete Beach City Manager apparently formulated a changed position that members of the public who visit the adjacent Arts Center would be able to access the entirety of the contested Beach parcel, and that the Chmielewskis had no right to deny public access over Block M and across their beach property, and that after this pronouncement by the City Manager, the City utilized and allowed the general public to access Block "M" and traverse on their beach property and the front part of their home property with increasing intensity and with impunity - see paragraph 45 of Exhibit "C" (emphasis added) .

16. The Chmielewskis further alleged in the underlying action that, **in January 2009,** when Mr. Chmielewski attempted to block public access to his Beach property across his private sidewalk with lawn furniture, the City dispatched police and seized his lawn chairs (paragraph 46 of Exhibit "C"), and that **on February 6, 2009,** the City Manager wrote the St. Pete Beach City Commission that the City had the right to use Block M, that "invitees" of the City had the same right as the City to use or access same, and that the Chmielewskis' ownership interest in Block M is subject to the rights of the City as owner of the adjacent Arts Center, and that members of the public who access the beach through Block M become "invitees of the City" and may access that parcel (see paragraph 47 of Exhibit "C") (emphasis added).

17. Moreover, the Chmielewskis also alleged in the undelying action that, **on February 10, 2009,** the City wrote Mr. Chmielewski and stated that the City staff received complaints about access to Block M through the sidewalk on their property and on his beach property, and that the City had dispatched staff to remove the "debris" which happened to be his lawn furniture, and threw it away in a dumpster – see paragraph 48 of Exhibit "C" (emphasis added).

18. The Chmielewskis further alleged that the City continued to deny their right to utilize density credits for their entire property, refusing to consider the contiguous Beach property and house property together for density calculation purposes (see paragraph 49 of Exhibit "C"); and that the City permitted, promoted, and commended public and charity events on

Blocks M and N, including on their Beach property, and did not cease or direct cessation of these activities **after the November 26, 2008 Final Judgment, but instead intensified them** (see paragraph 50 of Exhibit "C") (emphasis added).

19.    The Chmielwskis further alleged in their first count against the City in the 2nd Amended Complaint, sounding in 4th Amendment and 42 U.S.C. section 1983 constitutional violations, that the City provided police protection to the public and charity events on the subject Beach parcel **after the Final Judgment was entered on November 26, 2008,** that the City bused attendees to the Arts Center, staged the events from the Arts Center, and instructed attendees to walk from the Arts Center across their Beach parcel and Blocks M and N (see paragraph 51 of Exhibit "C") (emphasis added).

20.    Moreover, the Chmielewskis further alleged that, **following the quiet title Final Judgment [on November 26, 2008],** the City reinvigorated its actions to encourage the general perception that Blocks M and N were public property, and that in addition to the public parking meters in place, the City reestablished beach maintenance activities and continued to offer beach yoga classes every weekday morning, inviting the general public to access Blocks M and N through the Arts Center Park and plaintiff's property, and then **in July 2009,** the City asked the US Department of Interior to remove the use restrictions on the adjacent Arts Center properties so that the Arts Center could be used for "any and all purposes the City decides are in the best interest of the community", but that said request was refused (see paragraphs 52 & 53 of Exhibit "C") (emphasis added) .

21.   Lastly, the Chmielewskis alleged that as a direct and proximate result of the aforesaid actions by the City, they had suffered damages to their ownership and possessory rights, and in their use or enjoyment of their property in the aforesaid beach parcel in violation of the 4th Amendment to the United States Constitution, and 42 U.S.C. section 1983, and they requested judgment against the City of St. Pete Beach for damages, interest, and costs, and attorney's fees pursuant to 42 U.S.C. section 1988.

22.  As a result of the Chmielewskis' 2nd Amended Complaint specifically alleging "wrongful acts" by City officials invoking Public Official Errors and Omissions coverage within Count 1 of the 2nd Amended Complaint in the underlying lawsuit, PRM determined in December, 2013 that, should a final judgment or verdict be entered that is adverse to the CITY on those grounds, there would be coverage available to the CITY for the allegations contained within Count 1 of the Chmielewskis' 2nd Amended Complaint, pursuant to the PRM Coverage Document, effective April 1, 2008 under the Public Officials "Errors and Omissions" section, and endorsement No. 11. Specifically, under endorsement No. 11, "[t]his coverage applies only if a claim for damages arises out of a **"Wrongful Act"** committed during the coverage period."

A. For purposes of that endorsement, **"Wrongful Act"** is defined as meaning "… any actual or alleged error or misstatement, omission, act or neglect or breach of duty due to misfeasance, malfeasance, and nonfeasance, including employment-related practices, mental anguish arising out of employment related practices, discrimination, **or violations**

**of civil rights by the Member during the coverage period**". (emphasis added). Moreover, under endorsement No. 11 of the PRM Coverage Document, the term "**Occurrence**" means: "a "**Wrongful Act**" **committed during the coverage period** (emphasis added). All claims for damages based on or arising out of the same wrongful act or a series of related wrongful acts by one or more members shall be deemed one 'occurrence'. Only one Coverage Document issued by the Association, one self-insured retention and one Association excess limit of coverage is applicable to any one 'occurrence';

B. While coverage was afforded by PRM to the City as to Count 1 of the 2nd Amended Complaint, coverage was denied to the City by PRM as to the allegations in Count 2 of the 2nd Amended Complaint for an unlawful taking, or inverse condemnation, based upon a specific coverage exclusion for same. The allegations propounded against the City of St. Pete Beach in Count 1 of the 2nd Amended Complaint nevertheless fall within the aforesaid PRM coverage, and its endorsement.

23. Upon determining that coverage did apply for Count 1 of the 2nd Amended Complaint if those facts alleged within the four corners of the Chmielewskis' 2nd Amended Complaint were ultimately proven, PRM thereafter determined in December, 2013, that it was obligated, and had both a contractual and legal duty under the PRM Coverage Document to: (1) provide both coverage as well as; (2) provide a legal defense for the City for the

entirety of the subject underlying lawsuit by the Chmielewskis against the City of St. Pete Beach.

24. PRM thereafter provided that legal defense to the City through the law firm of Fulmer, LeRoy & Albee, PLLC in St. Petersburg, Florida, and thereafter appellate counsel through the law firm of Hicks, Porter, Ebenfield & Stein, P.A. and, as a result of defending its pool member, the City of St. Pete Beach, Florida, PRM incurred significant legal defense costs and expenses in the total amount of $426,640.77 prior to Count 1 of the 2nd Amended Complaint being settled amicably, post-judgment, between the parties.

25. The underlying Chmielewski litigation case against the City of St. Pete Beach proceeded to a jury trial on October 19, 2015 in Federal District Court for the Middle District of Florida in Tampa, Florida in Case No. 8:13-cv-03170-JDW-MAP and on October 23, 2015, the jury in that case rendered a final verdict in favor of the underlying action's Plaintiffs, Mr. and Mrs. Chmielewski and against the City of St. Pete Beach, as follows: "1. As to count 1, Plaintiff's 4th Amendment claim, do you find that the actions of the City of St. Pete Beach meaningfully interfered with the possessory interests of the Chmielewskis in their property, and that such actions were unreasonable? Yes."

26. The trial jury thereafter awarded Chester Chmielewski the sum of $50,000 for his mental and emotional distress and personal humiliation caused by the City's unreasonable, meaningful interference with his possessory interest in this property, and likewise awarded

Plaintiffs $75,000.00 to his wife for those same types of damages in the past and for any related harm that she is reasonably certain to experience in the future;

A. Moreover, the trial jury in the underlying lawsuit awarded both Mr. and Mrs. Chmielewski, and/or Chester Chmielewski's probate estate personal representative, the sum of $200,000 in compensation for the loss of use and enjoyment of their property as a result of the 4th Amendment violation, as well as awarding the sum of $400,000 in damages for the difference in the value of their Beach parcel property before and after the City's meaningful interference with their possessory interests in that property, in violation of the 4th Amendment. The Court thereafter awarded pre-judgment interest beginning on November 26, 2008, the date that the Final Judgment was entered by the Pinellas County Circuit Court in the quiet title action. Additionally, the trial jury also awarded $1,489,700 in damages as to Count 2 of the underlying lawsuit's 2nd Amended Complaint asserting inverse condemnation or wrongful "taking" of the Plaintiff's Beach parcel for public benefit.

26. On or about April 7, 2017, PRM achieved an amicable resolution and settlement of any and all allegations contained within Count 1 of the Chmielewskis 2nd Amended Complaint, and settled all covered allegations in that count for the sum of $750,000.00, in return for the issuance by the underlying action Plaintiffs of a partial Satisfaction of Final Judgment on said count and the issuance of a covenant not to sue/release as to said count, including the underlying plaintiffs' attorneys fees and costs taxable under 42 USC Section

1988. (See Exhibit "D") As of the date of this filing, the remaining (non-covered) count sounding in unlawful "taking", or inverse condemnation, remains on appeal with the 11th Circuit Court of Appeals in Atlanta, Georgia, case # 16-16402.

27.  MUNICH has a contractual duty to reimburse PRM for the settlement payment of $750,000, as well as to reimburse PRM all legal defense costs and expenses incurred in the underlying action, or otherwise considered within the definition of "Ultimate Net Loss" under Article VII of Exhibit "A" and incurred by PRM in excess of the $200,000 SIR threshold, pursuant to the Treaty;

A.  That in this case, said underlying action legal defense attorneys' fees and costs due and owing from MUNICH total at least $226,640.77. Therefore, MUNICH is contractually responsible for reimbursement, or repayment, of a minimum amount of reinsurance benefits to PRM in the amount of $976,640.77;

B.  MUNICH has, since January 13, 2014 and thereafter, declined coverage or in the alternative, wrongfully failed and refused on multiple occasions since that date to acknowledge and fully accept its reinsurance coverage obligations to fully reimburse both underlying legal defense costs totaling $226,640.77, or to reimburse PRM as to the settlement and satisfaction of judgment as to the covered 4th Amendment, 42 USC Section 1983 count in the amount of $750,000.00; and

C.  MUNICH has therefore breached its contract, i.e., the Reinsurance Treaty in question, which has proximately caused PRM economic damages in the amount of at least $976,640.77.

28. PRM provided reasonable and timely notice of the claim in accordance with all requirements under the Treaty and law, and has fully cooperated at all times with MUNICH.

29. PRM has satisfied all conditions precedent necessary to maintain this action including, but not limited to, the Reinsurance Treaty requirement of attending several mediations in this dispute which all resulted in impasse.  Such conditions precedent has therefore either occurred or were otherwise waived.  The performance of these conditions precedent includes the performance of all acts required by the Plaintiff PRM pursuant to the terms of the Reinsurance Treaty and which acts may be lawfully required in Florida pursuant to the terms of the Reinsurance Treaty.

## COUNT I- BREACH OF WRITTEN CONTRACT

30.  Plaintiff, PRM, adopts and incorporates by reference all allegations set forth in paragraphs 1 through 29 above and realleges the same for purposes of this count as if fully set forth herein.

31.  Notwithstanding PRM's entitlement to reinsurance coverage for its loss, MUNICH has, since January 13, 2014, breached its obligation under the Reinsurance Treaty by:

A. Failing to acknowledge and accept coverage for all "bad acts", "wrongful acts" and/or "occurrences" by (and against) the City of St. Pete Beach which were alleged by the Chmielewskis in Count 1 of the 2nd Amended Complaint of the underlying action, and thereafter proven in a jury trial in the underlying action as occurring after April 1, 2008, and; and

B. Failing to pay and/or fully reimburse PRM for any and all legal defense costs and expenses in excess of the $200,000 SIR, despite repeated demands by PRM and despite the fact that the Chmielewskis clearly alleged and thereafter proved and obtained damages for "bad acts", or "wrongful acts" and/or "occurrences" by (and against) the City of St. Pete Beach which took place, or transpired after the MUNICH Reinsurance Treaty went into effect on April 1, 2008, and/or during that coverage period beginning April 1, 2008 and expiring April 1, 2009.

32. PRM has the obligation under the MUNICH Reinsurance Treaty to investigate and, to the extent that may be required by the Coverage Document reinsured thereunder, to defend any claim affecting this reinsurance and to pursue such claim to final determination. See Article XV(C) of MUNICH Reinsurance Treaty.

33. PRM has repeatedly tendered its claim to MUNICH seeking both a written acknowledgment and acceptance of coverage in full as to Count 1 of the 2nd Amended Complaint in the underlying action asserting 4th Amendment civil rights violations actionable pursuant to 42 U.S.C. section 1983 & 1988, and also PRM has repeatedly

tendered its claim to MUNICH for payment and/or reimbursement of legal defense costs expended in defense of its pool member, the CITY, under the Reinsurance Treaty, but MUNICH has, since January 13, 2014, continually failed and/or refused to acknowledge said coverage obligations, and/or to reimburse PRM those legal defense costs in excess of PRM's SIR threshold of $200,000.00.

34.  MUNICH has therefore breached the Reinsurance Treaty by failing and refusing to pay and/or reimburse PRM for those same legal defense costs expended in defense of its pool member, the City of St. Pete Beach, in the above-referenced civil litigation by Mr. and Mrs. Chmielewski against the City of St. Pete Beach, when same is clearly due and owing under the terms of the Reinsurance Treaty.

35.  Because of MUNICH's failure and/or refusal to pay and/or reimburse PRM for sums expended in defense of its pool member in excess of the $200,000.00 SIR, specifically, in the amount of $226,640.77, PRM has incurred substantial legal defense costs in defending its member against the underlying litigation and in seeking to obtain benefits due under the Treaty.

36.  PRM has retained the law firm of Roper & Roper, P.A. to represent it in this action, and is obligated to pay its attorneys a reasonable attorneys fee for their services in this action.

37.  MUNICH is also liable for the attorney's fees incurred by PRM pursuant to Article VII of the Reinsurance Treaty and/or §627.428, Fla. Stat.  PRM respectively requests and/or demands an award of same against MUNICH.

38.  Plaintiff, PRM, further demands trial by jury on all issues so triable.

WHEREFORE, Plaintiff PRM respectfully requests a judgment for damages against Defendant, MUNICH, with prejudgment interest, costs, and attorney's fees and for such further and additional relief as this Honorable Court deems appropriate and just under the circumstances.

## COUNT II- BREACH OF WRITTEN CONTRACT

39.  Plaintiff, PRM, adopts and incorporates by reference all allegations set forth in paragraphs 1 through 29 above and realleges the same for purposes of this count as if fully set forth herein.

40.  On or about April 7, 2017, Plaintiff, PRM finalized a settlement agreement with Mr. and Mrs. Chmielewski and their representatives as to any and all allegations contained within Count 1 of Plaintiff's 2nd Amended Complaint in the underlying action against the City of St. Pete Beach, inclusive of plaintiff's attorneys' fees and costs in the underlying action, in the amount of $750,000.00. MUNICH was kept advised that all pertinent junctures of these ongoing settlement negotiations by PRM, and participated in settlement negotiations prior to said settlement agreement being achieved in April, 2017. Prior to April 7, 2017, MUNICH repeatedly urged PRM to exert its best efforts to achieve such a

settlement in order to extricate PRM from the underlying litigation, especially to the extent that the other count contained in the 2nd Amended Complaint for "unlawful taking", i.e. inverse condemnation, was not covered by the PRM Coverage Document or MUNICH Reinsurance Treaty.

41. MUNICH is contractually obligated under Exhibit "A" to reimburse PRM all such monetary amounts over and above the $200,000 SIR but has, since January 13, 2014, repeatedly breached its obligation under the Reinsurance Treaty by:

A. Wrongfully failing and refusing to acknowledge and accept coverage for all "bad acts", "wrongful acts" and/or "occurrences" by (and against) the City of St. Pete Beach which were alleged by the Chmielwskis in the 2nd Amended Complaint in the underlying action, and thereafter proven in a jury trial in the underlying action in October, 2015 as occurring after April 1, 2008, and; and

B. By failing to pay and/or reimburse PRM for the $750,000 settlement reached with the underlying plaintiff's on April 7, 2017, despite repeated demands by PRM and despite the fact that the Chmielewskis clearly alleged and thereafter proved and obtained damages in the underlying civil action and jury trial, via final judgment against the City of St. Pete Beach, for "bad acts", or "wrongful acts" and/or "occurrences" by (and against) the City of St. Pete Beach which took place, or transpired after the MUNICH Reinsurance Treaty went into effect on April 1, 2008, and/or during that coverage period beginning April 1, 2008 and expiring April 1, 2009.

42. PRM has repeatedly tendered its claim to MUNICH seeking payment and/or reimbursement of said $750,000.00 settlement payment since April 7, 2017, but MUNICH has wrongfully refused or, in the alternative, unjustifiably failed to reimburse PRM for said monetary sums.

43. MUNICH has therefore breached the Reinsurance Treaty by failing and refusing to pay and/or reimburse PRM for said $750,000.00 settlement payment on behalf of its pool member, the City of St. Pete Beach, in the above-referenced civil litigation by Mr. and Mrs. Chmielewski against the City of St. Pete Beach, when same is clearly due and owing under the terms of the Reinsurance Treaty.

44. Because of MUNICH's failure and or refusal to pay and/or reimburse PRM for sums expended in settlement of the covered claim on behalf of its pool member in excess of the $200,000.00 SIR, specifically, in the amount of $750,000.00, PRM has been damaged in that it has incurred these substantial monetary expenditures in satisfaction of a Final Judgment and settlement of a covered claim on behalf of its member against the Chmielewskis' underlying litigation.

45. PRM has retained the law firm of Roper & Roper, P.A. to represent it in this action as a direct and proximate result of the foregoing acts, omissions or other conduct on the part of MUNICH, and is obligated to pay its attorneys a reasonable fee for their services in this action.

46. MUNICH is also liable for the attorney's fees incurred by PRM pursuant to Article VII of the Reinsurance Treaty and/or §627.428, Fla. Stat. PRM respectively requests and/or demands an award of same against MUNICH.

47. Plaintiff, PRM, further demands trial by jury on all issues so triable.

WHEREFORE, Plaintiff PRM respectfully requests a judgment for damages against Defendant, MUNICH, with prejudgment interest, costs, and attorney's fees and for such further and additional relief as this Honorable Court deems appropriate and just under the circumstances.

### COUNT III—COUNT FOR DECLARATORY RELIEF AND JUDGMENT

48. Plaintiff, PRM adopts and incorporates by reference all allegations set forth in Paragraphs 1 through 29 of this Complaint above and realleges the same for purposes of this court as if fully stated herein.

49. PRM seeks a declaratory ruling, adjudication and judgment from this Honorable Court adjudicating that coverage exists under both Exhibit "A" and Exhibit "B" for, or as to, any and all allegations contained within Count 1 of the 2nd Amended Complaint by the Chmielewskis in the underlying action, and that coverage exists as to the alleged "wrongful acts", "bad acts" and/or "occurrences" by the City of St. Pete Beach after November 26, 2008, and that the Chmielewskis sought and obtained a jury verdict and monetary damages for such conduct which occurred after November 26, 2008, during MUNICH's coverage

period for the Reinsurance Treaty with PRM which was effective April 1, 2008 through April 1, 2009.

50. PRM further seeks a declaratory ruling, adjudication and judgment from this Honorable Court adjudicating that MUNICH has an absolute contractual obligation to immediately reimburse PRM for the entire $750,000 settlement reached between PRM (on behalf of the City of St. Pete Beach) and the Chmielewskis on April 7, 2017.

51. While MUNICH has willfully failed to fully accept and acknowledge reinsurance coverage as to said count, and also willfully failed to reimburse PRM its $750,000 settlement in the underlying case or its legal defense costs over and above the $200,000 PRM SIR, it nevertheless has, effective January 13, 2014, declined or denied coverage for any Ultimate Net Loss from "wrongful acts" that predate April 1, 2008.

52. While declining coverage for any ultimate net loss from "wrongful acts" predating April 1, 2008, MUNICH has still nevertheless wrongfully failed and refused since January 13, 2014 to acknowledge or accept coverage for the only "wrongful acts" alleged against the City of St. Pete Beach in the underlying case for conduct on or after November 26, 2008, notwithstanding the fact that those are the only "wrongful acts" for which the City of St. Pete Beach was sued in the underlying action.

53. PRM therefore respectfully seeks a declaratory ruling, adjudication and judgment in its favor as a matter of law holding that the only "wrongful acts" or similar "occurrences" which Plaintiffs alleged against the Chmielewskis in the underlying action, sought damages

for in that underlying action, and ultimately prevailed upon after proving their case in a federal jury trial, arose on or after November 26, 2008, rather than prior to April 1, 2008.

54. Wherefore, PRM prays for entry of an order following a trial by an advisory jury:

A. Assuming jurisdiction of the action and the parties hereto;

B. declaring that MUNICH and PRM are contractually obligated to provide coverage under Exhibits "A" and "B" of this Complaint for any and all allegations contained within Count 1 of Plaintiff's 2nd Amended Complaint in the underlying action;

C. That MUNICH is contractually obligated to reimburse PRM the sum of $750,000 due to the presence of such coverage;

D. Entering such judgments, injunctions, or other orders that are necessary for the implementation of this Court's decree;

E. Awarding PRM its costs and reasonable attorney's fees; and

F. Granting such other and further relief as this Court deems appropriate.

## COUNT IV- COUNT FOR DECLARATORY RELIEF AND JUDGMENT

55. Plaintiff, PRM, adopts and incorporates by reference herein all allegations set forth in paragraphs 1 through 29 above, and realleges the same for purposes of this count as if fully set forth herein.

56. PRM contends that MUNICH owes an ongoing contractual obligation under Exhibit "A" to this Complaint to reimburse PRM, in full, for legal defense attorney's fees, costs

and expenses incurred by PRM in providing a legal defense to the City of St. Pete Beach in the underlying action.

57.   PRM herein seeks a declaratory ruling, adjudication and/or judgment from this Honorable Court as to the "duty to defend" as contractually required under Exhibits "A" and "B", and/or alternatively MUNICH's contractual obligation under Exhibit "A" to reimburse PRM for all attorney's fees, costs or other expenses as defined within the terminology "Ultimate Net Loss" as contained within Article VII of Exhibit "A." Also, PRM requests declaratory ruling and judgment on the issue of the legitimacy of MUNICH's refusal to reimburse PRM for any and all legal defense attorney's fees and costs incurred in defending the City of St. Pete Beach in the underlying action .

58.   Moreover, PRM is also seeking a declaratory ruling, adjudication and/or judgment from this Honorable Court as to whether MUNICH is also contractually obligated to reimburse PRM for any and all attorney's fees, or other legal costs or expenses which were incurred and paid by PRM on or after January 13, 2014 to the office of undersigned counsel, or otherwise, pursuant to Article VII of Exhibit "A", and its definition of "Ultimate Net Loss" and "Declaratory Judgment Expenses," as a result of its wrongful denial and refusal to either accept coverage, and/or to reimburse legal defense expenses or for other attorneys' fees and legal expenses due and owing PRM for legal services rendered to it by Roper & Roper, P.A. on or after January 13, 2014 in this dispute.

WHEREFORE, Plaintiff, PRM, prays for entry of an order and respectfully requests a declaratory judgment against Defendant, MUNICH, with prejudgment interest, costs and attorneys' fees, following a trial by an advisory jury:

A. Assuming jurisdiction of the action and the parties hereto;

B. Declaring that MUNICH has a contractual obligation under Exhibit "A" of this Complaint to reimburse PRM any and all attorney's fees incurred by the defense attorneys retained by PRM to represent the City in the underlying action, over and above the $200,000 PRM SIR;

C. Declaring that MUNICH has a contractual obligation under Exhibit "A" of this Complaint to reimburse PRM any and all attorney's fees incurred by the law firm of Roper & Roper, P.A., or otherwise since January 13, 2014 in representing PRM as part of the ongoing coverage controversy under the terminology or definition of "Declaratory Judgment Expenses" contained within Article VII of Exhibit "A";

D. Entering such judgments, injunctions, or other orders that are necessary for the implementation of this Court's decree;

E. Awarding PRM its costs and reasonable attorney's fees; and

F. Granting such other and further relief as this Court deems appropriate.

## **DEMAND FOR JURY TRIAL**

Wherefore Plaintiff, PRM, herein requests a trial by jury on all issues so triable.

Dated: 12th day of January, 2018.

BY:   /s/ Donovan A. Roper

**DONOVAN A. ROPER, ESQUIRE**
Florida Bar No.: 858544
**ROPER & ROPER, P.A.**
116 North Park Avenue
Apopka, FL 32703
Tel: 407-884-9944   Fax: 407-884-4343
email@roperandroper.com
Attorney for Plaintiff, PUBLIC RISK
MANAGEMENT OF FLORIDA